United States District Court
District of Massachusetts

| | |
|---|---|
| SINOVAC BIOTECH LTD., and WEIDONG YIN, <br><br> Plaintiffs, <br><br> v. <br><br> 1GLOBE CAPITAL LLC, and THE CHIANG LI FAMILY, <br><br> Defendants. <br><br> 1GLOBE CAPITAL LLC, <br><br> Third-Party Plaintiff/ Counter Claimant, <br><br> v. <br><br> SINOVAC BIOTECH LTD., WEIDONG YIN, and NAN WANG, <br><br> Counter Defendant/ Third-Party Defendants. | Civil Action No. 18-10421-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

In this case involving alleged securities fraud, defendant 1Globe Capital LLC ("1Globe Capital" or "defendant") filed a counterclaim for securities fraud and abuse of process in April, 2018, and a motion for preliminary injunction in August, 2018. It seeks injunctive relief against plaintiff Sinovac Biotech Ltd. ("plaintiff" or "Sinovac") and third party defendants

-1-

Weidong Yin ("Yin") and Nan Wang ("Wang"). According to 1Globe Capital, Yin is Sinovac's former chairman and corporate executive officer ("CEO") and Wang is Sinovac's former corporate financial officer ("CFO").

1Globe Capital alleges that Sinovac, Yin and Wang violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by illegally issuing company stock without notification to or permission from the legitimate board of directors. Pending before this Court is defendant's motion for a preliminary injunction, the subject of this memorandum, and plaintiff's motion to dismiss the counterclaim of defendant. For the reasons that follow, the motion for a preliminary injunction will be denied.

I. **Background**

Sinovac is a NASDAQ-listed publicly traded company that is incorporated in Antigua, West Indies, with its principal place of business in Beijing, China. Sinovac is a biopharmaceutical company that researches, develops, manufactures and commercializes vaccines. 1Globe Capital is a Delaware limited liability company with its principal place of business in Cambridge, Massachusetts. 1Globe Capital is one of the largest shareholders of Sinovac and owns 16.4% of Sinovac's outstanding common stock.

**A. History of Management and Alleged Corruption**

1Globe Capital claims that since at least 2016, Yin, Wang and other members of the board of directors ("the Old Board") have sought to improperly maintain control over Sinovac. 1Globe Capital alleges that Yin and Wang and members of a buyer group they formed ("Management Buyout Consortium") submitted a proposal to acquire all of Sinovac's shares at below market value. In response, a group of Sinovac investors together with Sinobioway, a large publicly traded Chinese company, arranged a counteroffer at a higher price per share.

The Old Board then adopted a Rights Agreement in March, 2016, which 1Globe Capital maintains was designed to entrench the Old Board and to ensure that only the Management Buyout Consortium could acquire the company. 1Globe Capital claims that the Old Board used the Rights Agreement as a shield to prevent other investors from effectively mounting a competing bid. The Rights Agreement is governed by Delaware Law and its validity is the subject of ongoing litigation in both Delaware and Antigua.

In December 2016, an online report disclosing Chinese court documents revealed that Yin and other Sinovac employees bribed multiple Chinese officials from 2002 to 2011 to get vaccine trials approved and distribution of vaccines permitted. The Securities and Exchange Commission and Department of Justice

began an investigation into those potential violations of the Foreign Corrupt Practices Act.

On June 26, 2017, Sinovac announced that it had entered into a definitive agreement in which the Management Buyout Consortium would acquire the company. Two days later, Sinobioway submitted a revised proposal to acquire Sinovac at a 14.9% premium over the purchase price offered by the Management Buyout Consortium. The Old Board rejected Sinobioway's revised offer, citing concerns over Sinobioway's funding.

### B. Disputed Board Election

On February 6, 2018, Sinovac held its annual general meeting. At that meeting, 1Globe Capital and a majority of the other shareholders voted to install a new slate of directors ("the New Board"). Despite that vote, the Old Board has refused to relinquish management and control of the corporation. Sinovac and the Old Board claim that the purported election of the New Board was invalid under Antigua law. Sinovac asserts that Antigua law requires shareholders to provide advance notice of their intent to seek replacement of the incumbent board of directors.

### C. Issuance of Additional Shares

In March 2018, a month after the election of the New Board, Yin and Wang and members of the Old Board issued a large number of restricted shares to themselves.

On July 2, 2018, the Old Board issued additional shares of Sinovac pursuant to a private investment in public equity ("PIPE") transaction with private investors Vivo Capital, LLC ("Vivo Capital") and Prime Success, L.P. ("Prime Success"). Sinovac claims that the PIPE transaction was approved unanimously by the Old Board with the assistance and advice of an independent financial advisor and legal advisor who advised that the consideration offered was fair to the corporation. 1Globe Capital alleges, however, that Vivo Capital and Prime Success were members of the Management Buyout Consortium who purchased the shares at a discounted price in a further attempt of management to buyout Sinovac at below market value. 1Globe Capital also alleges that this issuance was an attempt to dilute the voting interest of the shareholders who voted for the New Board.

On July 3, 2018, Sinovac publicly announced that it had completed the PIPE transaction. Under the terms of the Securities Purchase Agreement ("the SPA") governing the PIPE transaction, the transaction can be rescinded if a court of competent jurisdiction enters an order on the merits determining that the transaction documents were not duly authorized or approved by the board of directors or that the shares were not validly issued or sold.

**D. Alleged Violations**

On March 5, 2018, Sinovac filed a complaint in this District against 1Globe Capital and the Chiang Li family. Sinovac's complaint includes two counts: 1) violation of Section 13(d) of the Exchange Act against 1Globe Capital and 2) violation of Section 13(d) of the Exchange Act against the Chiang Li family. Sinovac claims that Section 13(d) required 1Globe Capital to give advance notice to Sinovac and to update their Schedule 13 beneficial ownership filings before voting to elect a new board of directors at the annual general meeting and that 1Globe Capital violated this disclosure requirement by failing to do so.

1Globe Capital's counterclaim includes five counts: 1) abuse of process against Sinovac, Yin and Wang; 2) securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 against Sinovac, Yin and Wang; 3) fraudulent misrepresentation against Sinovac, Yin and Wang; 4) negligent misrepresentation against Sinovac, Yin and Wang; and 5) aiding and abetting against Sinovac.

1Globe Capital alleges that 1) Sinovac directly or indirectly disseminated false and misleading statements to artificially lower Sinovac's stock price to facilitate the acquisition proposal brought by the Management Buyout Consortium, 2) continued to disseminate false and misleading

statements with respect to the validity of the election of the New Board to maintain the Old Board's control and 3) secretly entered into private securities transactions without notifying the shareholders or the New Board elected at the February 6 annual meeting. 1Globe Capital further alleges that Sinovac brought the underlying complaint in this case to accomplish the ulterior motive of entrenching the Old Board.

**E. Procedural History**

Also on March 5, 2018, Sinovac filed a complaint against 1Globe Capital and members of the Chiang Li family in the Delaware Court of Chancery. In that action, Sinovac seeks declaratory and injunctive relief with respect to the company's Rights Agreement entered into in March, 2016. That action will determine the validity of the Rights Agreement and whether the "poison pill" in that agreement was triggered by the shareholder vote at the February 6, 2018 meeting.

On March 13, 2018, 1Globe Capital filed a claim against Sinovac in the Eastern Caribbean Supreme Court in the High Court of Justice, Antigua and Barbuda ("the Antigua Court") seeking a declaration that the New Board was validly elected and that any actions taken by the Old Board on behalf of Sinovac are null and void. Trial in that action was originally scheduled for early October, 2018, but has recently been postponed until December, 2018.

On April 10, 2018, 1Globe Capital applied to the Antigua Court for an emergency order enjoining the Old Board's attempt to enforce a judgment of the Delaware Court with respect to the validity of the Rights Agreement. On July 9, 2018, the Antigua Court denied 1Globe Capital's application for an interim injunction and shortly thereafter, the Delaware Court of Chancery denied Sinovac's motion for an expedited trial and 1Globe Capital's application for a status quo order. It ruled that the application should be presented in the first instance to the Antigua Court.

On August 1, 2018, 1Globe Capital filed a motion for a preliminary injunction with this Court seeking to enjoin the issuance of shares to the PIPE investors and the issuance of any future shares pending the trial in the Antigua Court. On August 20, 2018, Sinovac filed its opposition to defendant's motion for injunctive relief. Sinovac asserts that: 1) 1Globe Capital cannot demonstrate a reasonable likelihood of success on the merits of its underlying claim because 1Globe Capital lacks standing to sue directly under Section 10(b) and has not obtained leave of the Antigua Court to bring a derivative claim on behalf of Sinovac as required by Antigua law; 2) 1Globe Capital cannot demonstrate an imminent risk of irreparable harm because the terms of the SPA provide that the PIPE transaction may be rescinded in the event that a court finds that the

issuance of those shares was unauthorized; 3) the balancing of equities favors denying the preliminary injunction because 1Globe Capital has unclean hands; and 4) there is no public interest served by this Court considering an internal corporate dispute governed by Antigua law.

The Court heard oral argument on plaintiff's motion on October 11, 2018, after which it took the matter under advisement.

Pending before this Court are defendant's motion for a preliminary injunction and plaintiff's motion to dismiss the counterclaim but only the former is addressed in this Memorandum and Order.

## II. Plaintiff's Motion for a Preliminary Injunction

### A. Legal Standard

In order to obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007). Out of these factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)). The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction. See Asseo v. Pan Am. Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986). Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

**B. Application**

**1. Likelihood of Success**

Defendant alleges that plaintiff violated Section 10(b) of the Exchange Act and Rule 10b-5 by secretly entering into securities transactions after the February election without notifying the New Board or the shareholders. 1Globe Capital seeks to prevent Sinovac and the Old Board from 1) issuing stock to Vivo Capital and Prime Success pursuant to the PIPE transaction, 2) issuing additional shares of Sinovac stock in other transactions 3) otherwise dissipating Sinovac assets and

4) otherwise violating Section 10(b) of the Exchange Act or Rule 10b-5.

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder make it illegal for any person directly or indirectly

> (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; see also 15 U.S.C. § 78j(b).

The basic elements of a Section 10(b) and Rule 10b-5 claim are (1) a material misrepresentation, (2) scienter, (3) a connection to the purchase or sale of a security, (4) reliance, (5) economic loss and (6) a causal connection between the material misrepresentation and the loss. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005). 1Globe Capital brings its Section 10(b) and Rule 10b-5 claim both directly on behalf of itself and derivatively on behalf of Sinovac.

### a. Action on Behalf of 1Globe Capital

The Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), made it clear that to have standing to bring an action under Section 10(b) and Rule 10b-5, the private party must have been an actual purchaser or seller of

securities. Id. at 730-31. Defendant asserts, however, that a party seeking only injunctive relief does not have to show that the damages suffered were in connection with the purchase or sale of a security. Defendant relies on Langner v. Brown, 913 F. Supp. 260 (S.D.N.Y. 1996), for that proposition. The court in that case relied, in turn, on Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 546-47 (2d Cir. 1967). The particular holding in Mutual Shares cited in Langner has, however, apparently been overruled. See Cartica Mgmt., LLC v. Corpbanca, S.A., 50 F. Supp. 3d 477, 488 (S.D.N.Y. 2014) (holding that Mutual Shares has been overruled by Blue Chip and that the explicit holding of Blue Chip "bars claims for injunctive relief absent a purchase or sale of securities").

In addition to relying on tenuous law, defendant also cites cases that dealt with unrelated issues. See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F. 3d 157, 170 (2d Cir. 1999) ("To be clear, we do not hold that DeBartolo had standing to seek an injunction; that issue is not before us."); Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co., 4 F.3d 327, 332 (4th Cir. 1993) ("We need not today decide whether to endorse the exception to the Blue Chip standing rule . . . ."); Pelletier v. Stuart-James Co., Inc., 863 F.2d 1550, 1557 n.15 (11th Cir. 1989) (stating only in dicta that the policy considerations underlying Blue Chip would not require dismissal

of a suit for injunctive relief where the plaintiff is not a purchaser or seller of a security); Davis v. Davis, 526 F.2d 1286, 1289 (5th Cir. 1976) (approving, in dicta, the Second Circuit's approach in Mutual Shares with respect to injunctive relief but holding that plaintiff was actually a seller of securities for the purpose of his securities claim).

Only one Circuit Court of Appeals has addressed the particular issue of whether a party seeking only injunctive relief must show that the damages suffered were in connection with the purchase or sale of a security. In Cowin v. Bresler, 741 F.2d 410 (D.C. Cir. 1984), the D.C. Circuit held that only purchasers or sellers of securities have standing to seek injunctive relief under Section 10(b) and Rule 10b-5. The Court concluded that the same textual and policy considerations that informed the Supreme Court's decision in Blue Chip to limit standing to actual purchasers and sellers of securities applied equally to actions for injunctive relief. Id. at 424.

1Globe Capital's claim for injunctive relief relates exclusively to securities issued to Vivo Capital and Prime success in connection with the PIPE transaction and to other unspecified future securities transactions. 1Globe Capital did not purchase or sell any Sinovac securities in connection with the PIPE transaction, nor does it allege that it would purchase or sell securities in connection with the unspecified future

-13-

transactions.  Under Blue Chip, apparently 1Globe Capital lacks standing to bring a Section 10(b) and Rule 10b-5 claim because its alleged damages are unrelated to the purchase or sale of securities.  Furthermore, 1Globe Capital has cited no Circuit Court case law holding that the Blue Chip standing limitation does not apply to motions for injunctive relief.  Indeed, the only Circuit Court that has directly addressed that issue rejects 1Globe Capital's proposition.

For these reasons, defendant has not shown that it has a reasonable likelihood of success on the merits of its claim and thus its motion for preliminary injunctive relief on behalf of itself pursuant to Section 10(b) and Rule 10b-5 will be denied.

### b. Derivative Action

In addition to suing directly on behalf of oneself, a shareholder of a corporation may bring a claim derivatively on behalf of the corporation.  Generally, any damages in a derivative claim are awarded to the corporation rather than to the individual shareholder bringing the claim.  The laws of several states and foreign countries require a shareholder to make a demand on the board of directors before bringing a derivative suit. See, e.g., MODEL BUSINESS CORPORATION ACT § 7.42(AM. BAR ASS'N 2016).

Sinovac is incorporated in Antigua and Barbuda and thus Antigua law governs matters of Sinovac's corporate governance

and internal affairs. See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108-09 (1991) (holding that the content and scope of the demand requirement is derived from the law of the state of incorporation); Mariasch v. Gillette Co., 521 F.3d 68, 72 (1st Cir. 2008) (applying the law of the jurisdiction with authority over the corporation's internal affairs, namely its place of incorporation). 1Globe Capital argues that the demand requirement is irrelevant here because Fed. R. Civ. P. 23.1 governs shareholder derivative actions in federal court and that rule contains no demand requirement. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law (internal quotation marks omitted) (quoting Hanna v. Plumer, 380 U.S. 460, 465 (1965))). The Supreme Court held, however, that Fed. R. Civ. P. 23.1 relates only to the pleading requirements for derivative actions and does not set out the substance of the demand requirement which is governed by the state law of the state of incorporation. See Kamen, 500 U.S. at 96-97, 108-09.

The International Business Corporations Act of Antigua and Barbuda ("the IBC") provides that

> a complainant may, for the purpose of prosecuting, defending or discontinuing an action on behalf of a corporation, apply to the court for leave to bring an

>    action in the name and on behalf of the corporation or any
>    of its subsidiaries . . . [and that] [n]o action may be
>    brought . . . unless the court is satisfied (a) that the
>    complainant has given reasonable notice to the directors of
>    the corporation or its subsidiary of his intention to apply
>    to the court under Section 201 . . . ; (b) that the
>    complainant is acting in good faith; and (c) that it
>    appears to be in the interests of the corporation or its
>    subsidiary that the action be brought, prosecuted, defended
>    or discontinued.

Id. §§ 201, 202.  Reference to "the court" in §§ 201 and 202 of the IBC is specifically to the Antigua Court. Id. § 2 (defining "court" as "the High Court").

The relevant sections of the Antiguan statute indicate that a shareholder must apply to the Antiguan Court before a shareholder can proceed to bring an action on behalf of the corporation.  1Globe Capital has not sought leave from the High Court to pursue a derivative claim for securities fraud on behalf of Sinovac and therefore cannot show that it is likely to succeed on the merits of its derivative claim.

Defendant also submitted that § 204 of the IBC permits a shareholder to pursue an order restraining oppressive conduct on behalf of the corporation without first having to seek leave of the Antigua Court.  To the contrary, however, that section simply provides that "[a] complainant may apply to the court for an order under this section" but it does not otherwise alter the requirements of §§ 201 and 202 to pursue a derivative action.  The language of § 204 is entirely consistent with a requirement

that a shareholder seek leave of the Antigua Court to pursue an order restraining oppressive conduct on behalf of the corporation.

Because defendant is unable to demonstrate a reasonable likelihood of success on its securities fraud action brought on its own behalf or its derivative action brought on behalf of Sinovac, defendant's motion for a preliminary injunction will be denied.

### c. State Law Claims

Finally, defendant asserts various state law claims as a basis for granting preliminary injunctive relief.  In its initial memorandum in support of its motion for a preliminary injunction, 1Globe Capital makes no mention, however, of its state law claims but rather relies solely on alleged violations of the federal securities laws as the basis for preliminary injunctive relief.  The movant always bears the burden of establishing entitlement to a preliminary injunction. Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Holmes Prods. Corp. v. Catalina Lighting, Inc., 67 F. Supp. 2d 10, 12 (D. Mass. 1999).  By failing to cite any authority in support of its state law claims, defendant, as the moving party, has not met that burden of showing a reasonable likelihood of success on the merits of those claims and thus is not entitled to a preliminary injunction.

## 2. Potential for Irreparable Harm

While the likelihood of the success on the merits provides the "touchstone of the preliminary injunction inquiry," the second element for consideration, namely irreparable harm, in this case weighs heavily against defendant. Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998). To obtain preliminary injunctive relief, 1Globe Capital must demonstrate that it will suffer irreparable harm that is real and not purely theoretical. Matos ex rel. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004).

1Globe Capital argues that it will suffer irreparable harm because Sinovac will soon issue shares pursuant to the PIPE transaction which will dilute 1Globe Capital's ownership and voting power. According to Sinovac, however, those shares were already issued to Vivo Capital and Prime Success in July, 2018, and thus the pending motion for a preliminary injunction is too late to prevent the alleged harm. Furthermore, contrary to 1Globe Capital's claim that this transaction cannot be undone, there is a provision in the SPA that permits such rescission if the PIPE transaction is found not to have been duly authorized. There is, therefore, no risk of irreparable harm with respect to the PIPE transaction warranting preliminary injunctive relief.

1Globe Capital also maintains that there is a risk of irreparable harm to shareholder voting rights if Sinovac and the

-18-

Old Board is permitted to consummate future securities transactions. 1Globe Capital has not, however, alleged facts indicating that any stockholder vote is imminent or that Sinovac is contemplating other securities transactions in the immediate future. Rather, 1Globe Capital attempts to shift the burden of showing irreparable harm to Sinovac by suggesting that Sinovac has not shown how the issuance of a preliminary injunction would harm it pending resolution of the Antigua action.

The burden of proving irreparable harm remains on 1Globe Capital and it cannot satisfy that burden because its alleged harm with respect to shareholder voting rights and future securities transactions is speculative at this point. Thus, preliminary injunctive relief is unwarranted. See Coriatt-Gaubil v. Roche Bobois Int'l, S.A., 717 F. Supp. 2d 132, 138 (D. Mass. 2010).

## ORDER

For the forgoing reasons, defendant's motion for a preliminary injunction (Docket No. 25) is **DENIED**.

**So ordered.**

                                        _/s/ Nathaniel M. Gorton_____
                                        Nathaniel M. Gorton
                                        United States District Judge
Dated October 15, 2018